Gallagher's argument, although I do think that there is something a little stronger here. There was absolutely no objection by the United States at the sentencing of Mr. Gazda's case. And, in fact, the government noticed the error and filed a paper under Rule 35C to correct the judgment on the seventh day of the seven-day period. And Judge Malloy put out an order and said that he just didn't have enough time to resolve it within the confines of that time period, because Barragan-Mendoza says that the motion needs to be brought and resolved within the seven days. So I think that, for our purposes here, the government clearly waived it. And if they did have any remedy under Rule 35, they didn't perfect that properly. And I'll just leave it at that. So you're saying that the government has a joint request to the district court to rectify the shelter? In these two cases? In the Gazda case. You know, Judge, honestly, I don't know what the impetus for that was. If it was just not to talk out of turn, if Judge Malloy was feeling philanthropic, I don't know if he – I don't know what the motivation was. Because I was with Mr. Gazda as his attorney. Turning to the guilt phase issues – Well, on – just on the fine? Yes, ma'am. I think – I mean, obviously, under the Crime Victims Act, it should have gone to the Crime Finance. There's, to me, at least no question about that. So that if there is – so we – suppose we find that Judge Malloy erred in ordering a distributed shelter elsewhere. What happens from that point on? The judge erred, but the money's still there. I guess it's just up to the government to act upon that ruling? Well, we do have the distinguishing feature here that my client has not paid the money. Because you – your client is going to pay the money in any event to the clerk of the district court. Correct. So it doesn't – does it affect your client one way or the other? Well, I don't know. Assuming what Your Honor says is correct, that there's no alternative but to have the money paid over to the United States, if that's the law, it would seem to me if the money was never paid to the clerk of court in the first instance, redirecting the money at this juncture is different, I think, in my case than it is in Mr. Gallagher's case. I just see it as a factual distinction. In terms of our guilt phase issues here, I want to tell the Court I've been trying cases for about 18 years, and this turned out to be a pretty interesting case for me. The fact that the murder case was pending in state court was of great concern to me. And I thought, out of fairness sake, maybe that matter should proceed. And actually, I had had some state court practice before I became a federal defender, and I'm conversant with Montana law. And I know that they have that one-way jeopardy rule. So I had some trepidation in making that request, if you see where I'm going with this. In other words, if by my lights I could have snuck into federal court, created something that tried the murder, then maybe that would have stopped or jeopardied him out stateside. And I want to bring that to the Court's attention from the beginning, because that's not what we did. We asked Judge Malloy and the United States to put the federal case on hold, which I thought was eminently reasonable, let him go and try the murder case in state court in that venue, deal with that situation, and then come back to federal court when that case was resolved. And the government resisted that. And I think at that point, although it's not something that I bring here in terms of a merits claim being denied the continuance, it should be looked at as a contextual feature to my entire argument here. The government wanted to move forward. And then when the government stood up and made the opening statement to the jury, told the jury all about the murder and how Mr. Gazda had killed this person with this firearm and that they were going to hear this evidence. And knowing that that's not of evidentiary value, I let that go. But then Judge Malloy entered the discussion and said, I need to remind you, ladies and gentlemen of the jury, that we're not here to try a murder case. And I had no alternative but to put my two cents in. And it led to that argument that became difficult at times, I think, for each of us. But in the end, I submit that the defense was vindicated. And why were we vindicated? Because all the instructions at the end of the case turned out to be what I envisioned that they would be at the beginning of the case. And they had nothing to do with the indictment that was brought up by that grand jury. Now, what that turns on is, factually, what was the importance of Mr. Medley's testimony? The government, with all due respect to the lawyer who tried the case, who I frankly love as an esteemed colleague, I've worked with him for years, he just did not understand the gravity of Mr. Medley's testimony. When he told that jury that he was going to prove up that Mr. Gazda had admitted to having that gun in the course of that homicide, he offered that statement for its truth. And it thereupon became incumbent upon the United States to prove the falsity of that statement. And that statement was never proved false. And that's why my Rule 29 motion should have been granted. There was nothing. And, in fact, the last-minute discovery that we got, which I know the government didn't have, so I'm not really claiming any sort of hide-the-ball or Brady violation, it was learned the night before the trial, which is routine, it happens. A government witness says, oh, by the way. And we got the letter where this witness, Guy Johnson, said, apparently in that interview, that Bronson Smith was depressed, drinking, suicidal, and in possession of a firearm. Now, that changed the whole complexion of the case. Heretofore, I had not submitted any kind of justification theory. The jury instruction deadline had long since passed. But when I got that information, I felt it incumbent upon me to go ahead and submit the instruction. Now, before Judge Malloy, the government makes a big deal about that, that I submitted that instruction and that they were therefore entitled to rearrange their entire case to meet what they perceived as what was going to be my defense. I'm sorry. I want to tell you categorically, I think that's not the case. Well, it is. The government should alter its entire strategy. Now, those being the facts … Well, look, we try the case, you know, to a certain extent, the way they, you know, the way they have planned out, subject to Judge Malloy's control over the presentation of evidence. Judge Malloy has, you know, the district court judges have all the authority they need. Yeah. And tailor the presentation of evidence. You bet. And then there's a colloquy, part of that colloquy that you had with Judge Malloy. Judge Malloy calls the government on the spot and says, why are you anticipating a justification defense? Just stop. There's no need to get into all this. Let's see if the defense is going to raise this as a justification. But under the instructions, I think the government has to prove, disprove justification. Right. They do. So to some extent, once it was suggested, then, you know, what were they going to do? Well, that's a tough question. And, you know, I flipped this around in my mind, and I'm not here to obfuscate or do things, you know, that will just clearly give me the advantage. But I want to stick to my guns here and say just because I prompted that instruction doesn't mean the government unilaterally gets to rearrange all the proof burdens and do preemptively what they should do defensively. But they had the burden to disprove justification, if I'm not mistaken, under the instruction. Your Honor, I disagree with that respectfully because it was never in the indictment. That's why I wanted the jury transcripts, grand jury transcripts, to see what case was And we don't know that because that motion was denied. And I did show a particularized need. I think in this setting, those grand jury transcripts should be examined. If anything, if I don't prevail on anything here in terms of the merits, I think we at least need a vacate to go back down with an order, please, to have those grand jury transcripts released so we can see the case that was indicted over and against the case that was tried. But the government, it's the defense that raises the defense of justification, right? Judge, I didn't raise any defense. I proffered a jury instruction. Right. But I'm saying if the jury, if the grand jury transcripts don't mention justification, what does that prove? Well, I think it proves that the government tried at the trial of this case a preemptive justification theory. If you look at some of the excerpts of record and passages where the government spoke, the government spoke and said, fine, I'll assume the burden, we'll assume the burden to prove these new elements. But then later in the trial, when we were settling jury instructions, there was discussion that I shouldn't have to shoulder these burdens. And we were whipsawed into that kind of thinking. It was on again, off again. We really didn't know where we were. Besides which, you know, there's an easy remedy for this. If the government thinks that it's case and I submit that they should to a logical conclusion before they indict it, they could have indicted, alternatively, they could have indicted in more than one count. They could have indicted the August 9 and 10 with the murder as a separate count. They could have indicted the May through July possession as a separate count. But they subsumed everything under August 9 and 10 and then wanted to draw in, for purposes of impact, the murder into August 9 and 10. Did the murder case proceed? Yes, it did, Judge. And it was he was convicted, ultimately. And that matter was just argued to the Montana Supreme Court on a jeopardy theory. Yes, I just wanted to know. You're raising that. And they may very well, I don't know if they know what's happening in the Federal venue, but may very well want to wait and see what this Court does with the case. I wanted to pursue something. I believe you said that since the government witness told the story about the struggle, the government then had the obligation to disprove it? Exactly, Judge. That's what happened. I mean, why couldn't the jury think some of the story is just bluff on the part of, you know, he's telling admittedly the story and he puts in a justification, but I don't know why it has to be taken as credible. It could be just the way the defendant would have expressed themselves talking to somebody and not wanting to say, I'm a murderer. Okay. I'm with you there, Judge. And I'll tell you what. I would grant you that before I got the letter, before I got the last-minute discovery that told me that Bronson Smith was depressed, suicidal, and packing a I would have agreed with that. I would have agreed that a story to a person in a homeless shelter, hence months down the road from something happening, could have self-serving elements to it and a jury could dice that up and pick and choose. But not so after we know the background of Bronson Smith. He was suffering from post-traumatic stress disorder. He was suffering from depression. He was suicidal. He had all the markings and trappings of a person who wanted to commit suicide. Therefore, if that was the case and he was with Mr. Gonsta, who's to say, based on the evidence that's in this record before this jury, that that story in its totality was not true? Well, one thing is the number of shots, isn't it? I'm sorry, Your Honor? One thing is the number of wounds to the body of the victim. Right. But see, that's another problem, and that's why we suffered so much prejudice here. If this had been divvied up into separate counts, you don't think I would have filed a Rule 14 motion to separate that count from the other count? And you don't think that I would have hired my own expert to talk about pump-action shotguns and struggles and how many times it can go off? We didn't have any opportunity to do any of that kind of stuff. And until I started making noise, I submit that the United States was fully prepared to have the medical examiner testify to all of that. But Judge Malloy made known his displeasure, and he was not happy with the way that the government was trying this case. And I think they backed off it a little bit for that reason. And Dr. Dale, the medical examiner, his testimony came out to be a lot softer, I think, than originally expected. But I prepare my case, Your Honor, in particular Judge Noonan, completely differently if that justification theory is contained in that count. And I'm not saying that the government is not entitled to indict that case. They are certainly entitled to do that if they want to. Marolda says that. They can assume elements that are not necessarily in the statutory language. And that's what they did as a matter of fact in trying this case. But I'll bet you a dollar to a donut that that justification theory is not in that grand jury process. And if that's true, and I'm right about that, then he was indicted for one crime and tried for another. And that's a Fifth Amendment violation. I'd like to reserve the remainder of my time. All right. You may, Mr. Hubbard. Thank you. Let me take it from the top here. And if I could address the fine last, I'd rather get to the substantive issues of how this case unfolded. Mr. Gosda was indicted as a felon in possession of a firearm based on the fact that he was the last person to be seen with Bronson Smith, who was obviously a murder victim. The United States filed federal firearms felon in possession charges against Mr. Gosda, and he was arrested at a shelter in Las Vegas, Nevada, under the name of Henry, after a party by the name of Medley came forward and reported to police that Henry, his friend who he had met at the shelter, had admitted shooting a man in Montana named Bronson. Our victim was Bronson Smith. We pursued the felon in possession charges after that that we had filed prior to the filing of any homicide charges by the state of Montana. During the course of pretrial proceedings and during the course of a pretrial interview, it was determined that Mr. Bronson Smith, well, let me back up. Henry told Medley that he shot Bronson during the course of a struggle wherein Bronson was attempting to commit suicide because he was a cancer victim. During the course of a pretrial interview, I verified that Mr. Smith was a cancer victim, that he did take to drinking from time to time and was depressed, had even talked of suicide with pills, but never with a gun, and actually was in possession of his own firearm, separate and distinct from any firearm that Mr. Gosda may have had. Now, during the course of the pretrial time period, an instruction was submitted, which basically announced to me that justification was going to be the defense. And make no mistake, looking at that record, justification was the defense. Defense counsel argued that there was a struggle to the jury, even went through motions before the jury on how the struggle could have happened and the firearm discharged. Justification was the defense. The United States has no obligation to put whatever counsel is talking about about justification in an indictment. I don't understand that. There's no such requirement. Therefore, his request for grand jury transcript has no particularized need because we have no such obligation whatsoever. Pretrial, I asked Judge Malloy to disallow justification as a defense, because in this circuit, under Wofford, as I read it, justification is a question of law. You must meet four requirements before you even get the justification instruction. They are that he was an unlawful, under an unlawful and present threat of death or serious bodily injury. As an aside, I'll point out to you that the test in this circuit appears that the defendant has to be under threat of death. In other circuits, it encompasses third party. But I don't see that in Wofford. Second, he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct. That was my point pretrial. Now, I demonstrated, I thought adequately to the judge, that Mr. Gosda had possessed that firearm for days, for weeks, for even a month. He had recklessly put himself in possession of that firearm in a situation wherein if this tale, and I call it a tale, was true, he's the one that put the gun into the mix. Based on that, you cannot meet the second prong of Wofford. Therefore, in my view, Wofford didn't allow the justification defense instruction in this case. Judge Malloy did not agree with me. I think, without knowing, that he was concerned that he would be denying the defendant his theory of defense. My position was there wasn't even a scintilla of evidence, which is the standard. If you have just barely a scintilla, you don't get your theory. Nevertheless, he allowed the theory. Therefore, I prepared to meet it. Judge Malloy, and here's the importance of this case, Judge Malloy went too far. He allowed the justification defense when there was not the prongs to it, not a meeting of the test. And then he added to the situation by requiring the United States to prove beyond a reasonable doubt that justification did not apply. Now, there's a split in the circuits, and I cited them in my brief. You have Delevaux in, I believe, the third. And you have, I'm sorry, in the 11th, you have Dodd in the third, which say that the burden for a justification defense is on the defendant by a preponderance. Talbot, which the other two criticize and don't agree with, says the government has the burden of proof. All well and good. I saw it coming. I met it. I believe that's what a good prosecutor does. I met the defense. I convinced the jury beyond a reasonable doubt that justification was not appropriate here. There could not have been a struggle. Those two wounds were mortal. Either one of those wounds would have debilitated the victim to the point that there was no struggle and the need for a second shot. This truly was a homicide case, and the facts were inextricably intertwined with the possession. Look at Devereaux. Look at Dodd. And look at Talbot. Every one of those cases have intermixed with it some kind of shooting, assault, whatever. You cannot separate the homicidal conduct in this case from the felon in possession conduct. So what happened here? What happened here is this. The defendant got more than he was entitled to. He got an instruction requiring the United States to prove beyond a reasonable doubt that justification didn't apply. He asked for it, and he got it. So where is the prejudice to this defendant? There is none. He got more than he was entitled to. Judge Malloy went overboard to give him a theory of defense when, in my view, he was not entitled to it. Not only did he give him the theory of the defense without meeting the four-pronged standard of law, but then he put the burden on me, the United States, to prove beyond a reasonable doubt that there was no justification to this, which I did. Now, with regard to the argument about we could have charged two crimes, one possession up to this point and then possession on the 9th and 10th, that would be unconstitutional. Look at the Hodner case decided by this circuit wherein a party picked up a gun and then took it in for repair and picked it up again. Two counts were charged. This circuit held that that is double jeopardy. What the defense is trying to persuade you to believe is that the government should have charged two counts here. What he's trying to persuade you to buy into a theory that's unconstitutional. It would violate double jeopardy standards. Why? Because possession is a continuous crime. We demonstrated through our witnesses that Mr. Gazda picked up this rifle in July. He continually possessed it through July and into August and to the day that Bronson Smith was charged. You cannot pigeonhole possessions because possession charges a continuing pattern of conduct. Consequently, the bottom line here, what I ask you to do in this case, is affirm the conviction because the defendant got more than he was entitled to. He asked for a justification instruction. He got it. Plus, he got an extra element that the United States had to prove. But in affirming the decision, I don't – I ask you not to affirm the practice. If Judge Malloy had granted the motion to preclude the justification defense. Yes. Would the government have presented any evidence at all about the murder, alleged murder or the shooting of this fellow at the time? I think it probably would have been less. You can't – how can you prove his possession in this case without addressing the facts of the case? That was the dilemma in the case, granted. In answer to your question, yes, I think that there would have been proof of a shooting. Would I have had to bring in the medical examiner to show that the arm was destroyed, to show that there was a shot in the torso that probably took out his heart? Probably not. We're talking speculation here, and I'd rather not do that. But you make a good point by turning Wolford on its head and failing to follow it created the situation here. Judge Malloy leveled the playing field by putting the extra element on the United States to prove beyond a reasonable doubt. But that – I urge you not to make that as the procedure for the future. Because Talbot is wrong. Delevaux and Dodd are right, and I ask you to follow them in affirming the decision. I believe I've covered all the substantive points brought up. With regard to why did we prosecute it, the United States has a compelling federal interest in prosecuting federal firearms violations. Just because there's a homicide that the State might deal with, so be it. We charged first. We proceeded through with our charges. There's nothing illegal. There's nothing dirty. There's nothing wrong with that. What about the fine issue? Let's move to the fine issue. I can tell you what happened in this case. I handled everything but the sentencing, not to say that I would have picked up. So I'm not trying to say that I would have had a better judgment. We had an AUSA, somewhat inexperienced in federal matters, handle it. It was not picked up until after. Judge Malloy, truly, in both Kerry and Gosda, surprised us. We didn't anticipate that he would be directing fines to private charities. We're not criticizing him for his philanthropic motivations. But it's against the statute. We missed the boat, Judge, and didn't object. But as soon as we picked it up, we did it as quick as we can. We got it on the second – the seventh day. We think we've preserved it. If not, we don't believe we've waived it. I'm bothered by the waiver notion here because the case is – Ginsburg raised that argument all the time with defendants, all the time. And we don't always – We can't raise it. But we don't always win, Judge, because we have this plain air standard. Right, right. But what I'm really told by is that the government's sitting in the courtroom and doesn't recognize the problem. How can you say the error was plain? And it seems very – just because Judge Malloy did this for the first time doesn't make it not plainly erroneous. Let me try and back into an answer to that. Rule 35 allows a sentence to be corrected. Implicit in that is that there must be situations that arise that need correction, like maybe simply missing the boat until you recognize it. If you go on strict waiver, how would we ever have a legal issue come before this court that wasn't raised for the first time in the district court? We have all kinds of those cases. And our argument is if we didn't preserve it, which we think we did, and we don't waive that argument here, but if we didn't preserve it at the time by objecting we did by rule – the Rule 35 motion, if we didn't do it there, it is a purely legal question which may be raised for the first time on appeal. Well, let me pursue with you the argument that seemed to me at least something to think about when I started to explore with Mr. Mercer. These two shelters have a judgment awarding money to them. They have a legal interest in it. They may in the end not have it, but they have some claim to it. And you say we can dispose of it without hearing them. Now that seems to me an elementary denial of due process to the people who have a judgment in their favor. You can argue all you want if you sue them that the judgment was wrong and they should give it back to you. But how can you come here where nobody represents them and you tell us, well, it's open and shut. Well, it may or may not be. Let me turn the argument that you heard from Mr. Gallagher when he says, we, Mr. Carey, have no dog in the fight. Yeah. I don't think the shelters have any dog in the fight because it was an illegal sentence. So, therefore, I think you're pulling in third parties here that don't belong here because they weren't entitled to anything. Well, why don't you get a statement from them? We're not interested. We'd give it up. Because I don't think we have to start at the – I think that's putting the cart before the horse. Well, now, if you were right, we do nothing. You will write them a polite letter saying, by the way, you've got money under a mistaken law. Please give it back to us. And they'll give it back to you. In this case, I'm somewhat confident that there has been no payment of money. Right. So when the money is paid, they will – you don't even have to wait till it's paid. You say there's been a mistaken law. Will you please waive any rights you have to it? All you have to do is get the people who, on the face of it, are entitled to $45,000. It's quite a lot of money to say, we should dispose of it without ever hearing them. I hear what you're saying, Judge. I don't agree with it. I think the remedy here – No, no, why not? You're a fair-minded person. Why should we dispose of their money without hearing them? Because it's not their money. They should never have been entitled to it. No, that may or may not be true. I mean, I thought, actually, when I read this, maybe we should have issued an order asking them to appear here. But since that wasn't suggested, I didn't. But I do think you've got the wrong forum. Well, I guess our position, Judge, is because it's an illegal sentence, the remedy is right here to say, Judge, well, you were wrong. But you can't wipe out the other side. I agree. I understand. Yes. The answer to that is yes, we do. You could recognize that the error is that there's a plain error. That isn't – we could find or note that there's a plain error here. It doesn't necessarily mean we have to correct it. Unless the integrity of the judicial system would be impugned, and I think it would be. If you sit here and say it's an illegal sentence, I know it, and I'm not going to do anything about it, I think that's wrong. I think you've impugned the integrity of the judicial system, and that's why we're here. Because we think that's what's happened. We want to stop it. We want it turned around. We want it reversed to give the legal system the credibility that it should have, because it is our collective responsibility to enforce the law. And if we allow illegals – Let me make a very – I hope not too – do you think anybody knows or cares about this except the people in your office and possibly in Washington? Well, I can tell you that in the Seventh Circuit we've got the case I cited there. They cared about it, and they got it reversed. We care about it because it's illegal. And does our office care about it? Yes, Judge, it should, because it's an illegal sentence. Well, I know you care about it, and I assume the Attorney General cares about it, but I wonder if anybody in the United States else worries about it. This is not the First Circuit to address this, Judge. So someone besides us has cared about it. All right. Thank you, counsel.  I think you've reserved a few minutes. Thank you, Your Honor. I just wanted to make a couple points. The first is this case is not about the yeoman-like job that Judge Malloy did to make the trial fair, which I totally agree with. He was really in a bad spot, and he was just a spectacular judge under these circumstances trying to sort this problem out. And because he wound up giving me maybe more than I was entitled to, to err on the side of caution is not the issue. The issue is what case was indicted and what case was tried. Well, what is it normally? It's not the government's burden of proof to prove your defense, right? No, it's not. I totally agree with you. It's not. Absolutely it's not. But the way that these circumstances evolved, and I want to go back to something that my colleague said, and I have to respectfully disagree with it. He's leaving the impression that Judge Malloy from the onset said justification is coming into this case. He said nothing of the kind. I proffered a supplemental jury instruction the day the trial started, I think, or the evening before I left the office. Mr. Ubley filed a brief in opposition to that, and that's where the matter stayed until opening statements. This problem did not resurrect until opening statement was made and I started to make the objections, and Judge Malloy indicated that we were not going to try the murder  case, and if you look at this record carefully, and forgive me, I don't have precise references, but where we digressed and had discussions, we meaning the lawyers in the court, there were opportunities that Judge Malloy gave to the United States to shut down on this business, and they kept going. They wound up calling Mr. Medley and Mr. Johnson at the end of their case, despite not implied warnings, I think very direct warnings by Judge Malloy, that this case was going to turn into something that it was never envisioned to be, and that's what happened. And Mr. Gosda was not indicted for that crime, and I'll tell you, if there had been something about that murder and justification in one of those counts, any lawyer worth his salt would have tried it differently. He would have moved to sever the counts, and that's the way it should have been tried if this is the case the government wanted to try. And this is the case the government wanted to try because we can see it in the record. That's the proof of that pudding. And based on that, I'll submit it. Thank you. All right. Thank you, counsel. Before we hear the next case, we're going to take a 10-minute recess. But counsel, for seeing Evans, Lopez, and Quarles, I understand that you didn't receive the notice that you had planned to submit two cases and just your argument on two. Because of that and because you're all here, please feel free to allocate the time amongst yourselves in the manner you prefer at this point. Thank you. All rise. This court stands on recess for 10 minutes. 10 minutes.
judges: Wardlaw, Paez,noonan